DISTRICT COURT OF THE UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――X   Civil Action No.: 21-cv-11023

Cheryl Hager-Reilly,
        -Plaintiff

                              **COMPLAINT**

   -against-

                              **JURY TRIAL**

SCO Family of Services,                     **DEMANDED**

        -Defendant.                        **ECF CASE**

―――――――――――――――――――――――X

Plaintiff CHERYL HAGER-REILLY (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, Kareem E. Abdo, Esq., complains against the above captioned Defendant, SCO FAMILY OF SERVICES (hereinafter referred to individually as "Defendant") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which the Plaintiff, CHERYL HAGER-REILLY, seeks relief for the Defendant SCO FAMILY OF SERVICES's violations of her rights secured by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. Plaintiff sought and was issued a "right to sue" letter from the Equal Employment Opportunity Commission. That letter is attached as EXHIBIT A.

2. In addition, pursuant to 28 U.S.C. § 1367, Plaintiff asks this Honorable Court to exercise its supplemental jurisdiction over Plaintiff CHERYL HAGER-REILLY's New York State and New York City claims as "they form part of the same case or controversy."

3. Plaintiff seeks injunctive relief, compensatory and punitive damages, an award of costs, interest and attorney's fees and such other and further relief as this Honorable Court deems just and proper.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. § 12101, et seq. Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1331, this being an action seeking redress for the violation of the Plaintiff's rights conferred by federal statute thus raising a federal question.

5. Pursuant to 28 U.S.C. § 1367, this Honorable Court may also exercise its supplemental jurisdiction over Plaintiff's state and city claims.

6. Venue in this District is proper under 28 U.S.C. § 1391 (b) and (c) in that Defendant, SCO FAMILY OF SERVICES, is administratively located, in part, within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## JURY TRIAL DEMANDED

7. Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## THE PARTIES

8. Plaintiff CHERYL HAGER-REILLY is an individual.

9. Defendant SCO FAMILY OF SERVICES is a private entity that operates as a not-for-profit organization.

## FACTS UNDERLYING THE ACTION

10. Plaintiff CHERYL HAGER-REILLY is a teacher.  Plaintiff is a certified special education teacher.

11. Defendant SCO FAMILY OF SERVICES owns and operates The Christopher School, a school for severely debilitated students including those with severe autism.  The school is located in the Bronx, New York.

12. Plaintiff CHERYL HAGER-REILLY was employed by the Christopher School and thus Defendant SCO FAMILY OF SERVICES as a special education teacher.

13. Plaintiff CHERYL HAGER-REILLY was interviewed and selected by Defendant SCO FAMILY OF SERVICES's employee(s) by and through the Christopher School and was ultimately hired by the same.

14. Plaintiff CHERYL HAGER-REILLY was hired in October of 2019.

15. Plaintiff CHERYL HAGER-REILLY was terminated by SCO FAMILY OF SERVICES on March 26, 2021.

16. The period between October 2019 and the end of March 2021 is the overwhelming majority of three academic years for a person in Plaintiff's profession.

17. On May 3, 2021 at 3:58 p.m. an employee of Defendant SCO FAMIY OF SERVICES, named, "Kristen" called Plaintiff CHERYL HAGER-REILLY inquiring if Plaintiff would be interested in applying to the Defendant as a special education teacher, the same role she was terminated from about a month previously.  The call lasted two (2) minutes and fifty-six (56) seconds.

18. Plaintiff CHERYL HAGER-REILLY performed a number of duties as a special education teacher.

19. As a special education teacher, on behalf of the Christopher School, Plaintiff CHERYL HAGER-REIL:Y was responsible for modifying lesson plans and developing lesson plans that would foster an individual's ability to learn as that individual likely could not learn with an unmodified lesson.  For example someone on the autism spectrum may not be able to process information in a particular way and thus identifying how to present that information was one of the roles of Plaintiff CHERYL HAGER-REILLY.

20. Indeed Plaintiff CHERYL HAGER-REILLY, at the Christopher School, was tasked with teaching six (6) students and each student was drastically different than the other.  Plaintiff CHERYL HAGER-REILLY had to develop lesson plans for each individual as compared to a class of individuals as is more typical for others in Plaintiff's profession, and was thus a unique role that Plaintiff assumed on behalf of the Christopher School and Defendant SCO FAMILY OF SERVICES.

21. That is not to say that Plaintiff CHERYL HAGER-REILLY did not teach the whole class of severely disabled students together.  That indeed was another one of Plaintiff's roles and she performed as was her duty.

22. There was an aspect of comprehension, for example reading comprehension, that Plaintiff CHERYL HAGER-REILLY was tasked in developing, as well as math functioning.

23. Plaintiff CHERYL HAGER-REILLY developed the lesson plans and taught the same herself while being supervised by Defendant SCO FAMILY OF SERVICES supervisors.

24. Plaintiff would use unique techniques, such as, and for example, in math education, Plaintiff CHERYL HAGER-REILLY would make use of "manipulatives" like blocks, clay, candy and/or use a teaching board for visuals for her students.

25. It is clear that Plaintiff CHERYL HAGER-REILLY was quite capable of teaching severely disabled and/or autistic students. Indeed Plaintiff was hired to do the same in October of 2019 and did the same for a year and a half, or three different school years for those in Plaintiff's profession.

26. Due to the unique nature of these students, who were often young adults and fully functioning physically, but developmentally challenged, Defendant SCO FAMILY OF SERVICES had to hire direct service providers ("DSPs"). These DSPs are staff members of the Christopher School responsible for supporting and supervising an individual whose behavior support plan incorporates the use of any physical intervention technique.

27. The severely autistic and/or disabled students who Plaintiff CHERYL HAGER-REILLY taught required such intervention techniques. Not all of the students Plaintiff CHERYL HAGER-REILLY taught required DSP attention at all times or even much at all, but some did.

28. The students SCO FAMILY OF SERVICES hired Plaintiff CHERYL HAGER-REILLY to teach are often grown adults. Indeed the Christopher School services students until they reach the age of 21 when they are then transitioned into an adult placement living arrangement.

29. There are a number of techniques to supervise the students in the population that needed their behavior modified which were serviced by the Christopher School. These "Strategies for Crisis Intervention & Prevention" ("SCIP") procedures were taught to the

teachers and to the DSPs. It was the only role of the DSPs to implement these procedures to assist the teacher class.

30. Indeed the policy of the Christopher School as operated by the Defendant SCO FAMILY OF SERVICES is that the teacher is separate from the DSP class and that for every six (6) students there was to be three (3) DSPs and a teacher such as Plaintiff CHERYL HAGER-REILLY.

31. This was known as the "six (6), one (1), three (3)" policy of the Christopher School and was a phrase that was used often by individuals employed by the Christopher School.

32. There were several techniques and escalating levels of restraint and control, of these disabled students, that Plaintiff CHERYL HAGER-REILLY was taught, as described *herein*.

33. For example "step one" was to escort the student.

34. A "wrap" was a separate and distinct level of escalation where a person would actually physically restrain one of the disabled students. Plaintiff CHERYL HAGER-REILLY did in fact conduct this technique.

35. Sometimes a student would have to be taken out of the classroom and put in a "sensory room" which again is a separate and distinct level of escalation.

36. While the Plaintiff CHERYL HAGER-REILLY did learn these "SCIP" and indeed did use the procedures, it was the *only* role of the DSPs to implement them.

37. DSP engagement, is frankly, critical for teaching these students. One such student, for example, attacked Plaintiff CHERYL HAGER-REILLY and took her business casual boots off her feet.

38. To explain the situation more explicitly, the DSPs are assigned to be in a special needs classroom and protect the teacher and the students.

39. Clearly the DSPs, an emphasis on the plural, failed to protect Plaintiff CHERYL HAGER-REILLY as described in Paragraph 39 of this COMPLAINT.

40. The DSPs would play on their phones instead of working.

41. The DSPs would listen to their headphones while working, an obvious lapse of duty, professionalism and competence, in this, a critical position.

42. The student described in Paragraph 39 of this COMPLAINT likewise took the shoes of another employee of Defendant SCO FAMILY OF SERVICES, Christa Capriglioni.

43. Plaintiff CHERYL HAGER-REILLy discussed with Christa Capriglioni, who is a supervisor with Defendant SCO FAMILY OF SERVICES, the situation and that while she understood the unique nature of the students she was teaching, that Plaintiff said, "I am here for academics" Christa Capriglioni said "yes, you are to do academics only."

44. Plaintiff CHERYL HAGER-REILLY took on behalf of the Christopher School operated by Defendant SCO FAMILY OF SERVICES several courses in first aid, SCIP, and cardiopulmonary resuscitation ("CPR").

45. Plaintiff CHERYL HAGER-REILLY, however, told the Christopher School supervisors, after being introduced to the actual physical requirements of CPR, that she could not perform them due to her adult onset asthma.

46. "Adult onset asthma" is much like the more famous respiratory condition, "asthma" that occurs in children. Almost all children with asthma outgrow the condition by the time they

become young adults.  Adult onset asthma almost antithetically develops in adults over the age of twenty (20) and is typically considered to be more severe than the condition in children.

47.  The reason that Plaintiff CHERYL HAGER-REILLY can not physically perform CPR is bifurcated.  First, CPR requires a person performing CPR to greatly physically exert themselves by rapidly compressing the chest cavity of a CPR recipient.  A person with asthma and adult onset asthma will actually exacerbate and cause more severe symptoms, thus making it more difficult to breathe, because of the feverish exercise required by CPR.  Second, more famously, and obviously not at all unrelated to the first, a person with asthma and adult onset asthma have trouble breathing and blowing heavy breaths which is required for CPR.  Obviously and importantly, it is more difficult for any person, particularly those with asthma and adult onset asthma, to breathe heavy breaths into another human being, while exercising feverishly.  Famously, it is more difficult for a person with asthma and adult onset asthma *to breathe,* to exercise, and blow heavy breaths, all of which is required for effective CPR.

48.  There is no question that Plaintiff CHERYL HAGER-REILLY could not physically perform CPR.

49.  When Plaintiff CHERYL HAGER-REILLY learned that she was required by her employer SCO FAMILY OF SERVICES to perform CPR, she explained that she could provide a document from her doctor, to the Plaintiff's supervisors at the Christopher School, indicating explicitly that Plaintiff could not perform CPR.  Thus explicitly indicating that Plaintiff CHERYL HAGER-REILLY requested her employer The Christopher School, owned and operated by Defendant SCO FAMILY OF SERVICES to take into consideration her medical condition.

50. However, Principal of the Christopher School, Gisela Lino, and the Director of the Christopher School, Susan Moran, asked and, the Plaintiff CHERYL HAGER-REILLY agreed, that Plaintiff would attend the training to see if there was anything Plaintiff could perform.

51. Unfortunately, Plaintiff knew she could not perform the actions being demonstrated to her during the training.  She knew that she simply was unable to physically perform CPR, due to her adult onset asthma.  The Plaintiff said affirmatively she could not do the physical actions necessary to perform CPR.  Thus indicating that Plaintiff CHERYL HAGER-REILLY again expressed that she could teach but could not perform CPR.

52. On March 26, 2021, Plaintiff CHERYL HAGER-REILLY was terminated.  The termination notice for the significant majority of the volume of the document describes the fact the Plaintiff "failed to become certified in CPR" and that this was the reason and *the primary reason* Plaintiff CHERYL HAGER-REILLY was being terminated, and indeed was the first "violation" discussed.

53. The document also discusses for a smaller volume of the document other concerns related to Plaintiff's employment, however these concerns were not discussed in nearly the detail of the CPR "violation" and indeed examples of these other concerns are much more sparse than the discussion regarding CPR.  The general nature of these concerns and the clear fact that they are ancillary to the CPR concerns and that the concerns discussed were discussed only in conjunction with the CPR concerns indicate rather conclusively that the reason Plaintiff CHERYL HAGER-REILLY was terminated from the Christopher School, owned and operated by SCO FAMILY OF SERVICES directly for Plaintiff CHERYL HAGER-REILLY's inability to perform CPR due to her adult onset asthma.

54. Such termination is illegal as Plaintiff's ability to perform as a "teacher" is ancillary to her inability to perform CPR because of her adult onset asthma in the six (6), one (1), three (3) model of the Defendant.

55. Plaintiff CHERYL HAGER-REILLY indeed suffered the employment injury related to a violation of the civil rights laws.  She did however successfully obtain a position, again teaching severely disabled students and again taught "modified lesson plans" for this small population of students.  While the population Plaintiff CHERYL HAGER-REILY currently teaches is not identical to that of the Christopher School a number of students Plaintiff teaches are severely autistic.  Plaintiff CHERYL HAGER-REILLY's students likewise require assistance from paraprofessionals, which is a role much like Defendant SCO FAMILY OF SERVICES, DSPs.  Her current employer is the Department of Education of the City of New York.

## CAUSES OF ACTION

### FIRST CLAIM: ILLEGAL DISCRIMINATION

**ILLEGAL EMPLOYMENT PRACTICES BASED UPON DISABILITY AS DESCRIBED IN The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 and prohibited by 42 U.S.C. § 12112, et seq.**

**AGAINST Defendant SCO FAMILY OF SERVICES**

56. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

57. Plaintiff, as stated in this COMPLAINT *supra,* was discriminated against because of her adult onset asthma by her employer, Defendant SCO FAMILY OF SERVICES.

58. Thus the prohibition against unlawful employment practices made unlawful by the American with Disabilities Act of 1990 was violated by Defendant SCO FAMILY OF SERVICES.

## SECOND CLAIM: ILLEGAL DISCRIMINATION

**ILLEGAL EMPLOYMENT PRACTICES BASED UPON DISABILITY AS DESCRIBED IN New York State Human Rights Law N.Y. Executive Law, Article 15 § 296(1)(a).**

**AGAINST Defendant SCO FAMILY OF SERVICES**

59. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

60. Plaintiff, as stated generally in this COMPLAINT *supra,* was discriminated against because of her adult onset asthma by her employer, Defendant SCO FAMILY OF SERVICES.

61. The Defendant has willfully violated the anti-discrimination portion of the New York State Human Rights Law N.Y. Executive Law, Article 15 § 296(1)(a).

## THIRD CLAIM: ILLEGAL DISCRIMINATION

**ILLEGAL EMPLOYMENT PRACTICES BASED UPON PREGNANCY AS DESCRIBED IN New York City Human Rights Law.  8 Admin. Code of the City of New York § 8-107, 1(a).**

**AGAINST Defendant SCO FAMILY OF SERVICES**

62. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

63. Plaintiff, as stated generally in this COMPLAINT *supra,* was discriminated against because of her adult onset asthma by her employer, Defendant SCO FAMILY OF SERVICES.

64. The Defendant has willfully violated the anti-discrimination portion of the New York City Human Rights Law, 8 Admin. Code of the City of New York § 8-107, 1(a).

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against the Defendant:

a. Injunctive relief;

b. Compensatory damages in the amount to be determined by a jury;

c. Punitive damages in an amount to be determined by a jury;

d. The convening and empaneling of a jury to consider the merits of the claims herein;

e. Costs and interest and attorney's fees;

f. Such other and further relief as this Court may deem just and proper.

Dated: December 22, 2021
New York, NY

                                        */s/ Kareem E. Abdo*
                                        Kareem E. Abdo, Esq.
                                        30 Wall Street
                                        Floor 8
                                        New York, NY 10005
                                        Tel: (212) 439-4723
                                        Fax: (212) 943-2300
                                        E-mail: kareemabdolaw@gmail.com

                                        *Attorney for Plaintiff*